UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.                                   S1 12 Cr. 153 (RJS)

JIA HOU,
      a/k/a "Jenny Hou,"

             Defendant.
-------------------------------------------------------X

### REPLY SENTENCING MEMORANDUM OF JIA (JENNY) HOU

October 8, 2013

GERALD B. LEFCOURT, P.C.
Gerald B. Lefcourt
Sheryl E. Reich
Renato C. Stabile
148 East 78th Street
New York, N.Y. 10075
(212) 737-0400
(212) 988-6192
lefcourt@lefcourtlaw.com
*Attorneys for Jenny Hou*

LAW OFFICES OF
# GERALD B. LEFCOURT, P.C.
A PROFESSIONAL CORPORATION
148 EAST 78TH STREET
NEW YORK, NEW YORK 10075

GERALD B. LEFCOURT
lefcourt@lefcourtlaw.com

TELEPHONE
(212) 737-0400
FACSIMILE
(212) 988-6192

SHERYL E. REICH
reich@lefcourtlaw.com
RENATO C. STABILE
stabile@lefcourtlaw.com
FAITH A. FRIEDMAN
ffriedman@lefcourtlaw.com

October 8, 2013

**VIA ECF**

The Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

*United States v. Oliver Pan, et al,. S1 12- Cr- 153 (RJS)*

Dear Judge Sullivan:

We write as counsel to Jia (Jenny) Hou to address several points raised by the government in its Sentencing submission filed October 2, 2013 ("Gov't Memo"). Under the briefing schedule established by the Court, Ms. Hou did not have the opportunity to address the final pre-sentence report (PSR) as the government did and seeks here to comment on several arguments made by the government. We make every attempt to be brief.

## The Final PSR

In the final PSR, the Probation Department made a significant revision from the draft report, deleting a number of unwarranted characterizations of the evidence and of Ms. Hou's intent and adding indications where Ms. Hou had no knowledge of any wrongdoing. It now believes that Ms. Hou is a level 15 for Guidelines' purposes, not a level 18 as reported in Ms. Hou's opening submission. The government continues to contend that Ms. Hou is a level 17. The following chart, updated from the prior submission, sets out the differences

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
October 8, 2013
Page 2

with respect to the relevant contentions:

| Adjustment | Defendant | Gov't | PSR |
|---|---|---|---|
| Loss, $10,000 - $30,000 (§2B1.1 (b)(1)(C)) (+4) | no | yes | yes |
| Sophisticated means (§2B1.1 (b)(10)(C)) (+2) | no | yes | no |
| Abuse of position of trust (§3B1.3) (+2) | no | yes | yes |

    I.    **The Government's Argument that Ms. Hou's Conviction on Count Two Pertains to the May 9th and August 17th Events and Not the Thomas Wang Solicitation is Not Supportable.**

The core division between the government's position on the correct Guidelines' calculation and that urged by Ms. Hou concerns the amount of intended loss, and more specifically, whether the conviction on Count Two – the attempted theft of matching funds from the City of New York – pertains to the government's argument to the jury that Ms. Hou attempted to commit wire fraud by her solicitation of a donation from Thomas Wang, or upon the alternate theory the government urged on the jury, that Ms. Hou knowingly and intentionally furthered the donations made by 18 or 19 donors of the 49 donations collected around the May 9th fundraising event and the phony donations made by eight donors at the August 17th event.

Notwithstanding the government having urged the Thomas Wang theory on the jury, it now contends that it was the other fundraising events upon which the jury relied. And it does so by singularly focusing on a warped and unsupported view of what the law requires with respect to intermediary disclosure that not only requires the Court to ignore the testimony of Martin Connor, upon whose advice Ms. Hou entirely relied in making decisions about intermediary

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan<br>
United States District Judge<br>
United States District Court<br>
Southern District of New York<br>
October 8, 2013<br>
Page 3

reporting, but also the testimony of the two witnesses from the Campaign Finance Board called to trial by the government itself. We urge the Court to reject the government's steadfast but erroneous view that all persons who solicit or deliver contributions are intermediaries and therefore must be reported. It is simply not a correct statement of the law and, even if it were, it was not what Ms. Hou was advised by counsel.

The issue, presented in the PSR in responding to objections made by Ms. Hou to the draft PSR (¶'s 25, 30, 36 and 40), is whether it is a correct recitation of the law that "a host of a [fundraising] event is an intermediary if s/he solicits or delivers contributions". That is the government's position (as set forth in the PSR at 29) and adopted by the PSR. *Id.* On the basis of that definition, the government has argued and continues to argue that Ms. Hou's knowledge of the scheme and efforts to further it are demonstrated by her failure to report intermediaries with respect to the May 9th event, despite the evidence that she knew that the hosts, in particular Mr. Wang, solicited and Mr. Lu delivered contributions. *Id.* Not only did Martin Connor, Esq., testify otherwise at trial, but so too did both CFB witnesses called by the government:

Dan Cho, head of CFB's Candidate Services Unit, was asked about the exceptions to the "all hosts are intermediaries" rule. He conceded that the rule did not apply where the campaign paid for the event:

> Q: So, if the campaign pays for an event and there are ten hosts who invited people, but the campaign pays for the event and people contributed all kinds of different numbers, it is not a reportable intermediary, right?
>
> A: There is an exception where if it is a campaign-sponsored event paid for in whole or part by the campaign, that intermediary disclosure does not necessarily need to happen. However, in general, intermediary disclosure should occur for any intermediated contributions the campaign knows about.
>
> **Q: But if just the hosts invite people and the campaign pays for the event, no intermediary, right?**
>
> A: **Technically there's that exception, correct. No.**

Tr. 1336 – 37 (emphasis added).

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

> Hon. Richard J. Sullivan
> United States District Judge
> United States District Court
> Southern District of New York
> October 8, 2013
> Page 4

The government's other CFB witness, though less sure about the rules (though it was he who trained Ms. Hou and from whom she was alleged by the government to have learned all the rules), confirmed the exception. Asked at trial about the nuances of intermediary reporting, CFB trainer Adam Schafenberg testified as follows:

> Q: Let's say that there is a fundraising event in a restaurant and there is a host who invited 150 people, and each of those people donate. Is that person an intermediary?
>
> A: Yes.
>
> Q: However, if the campaign pays for that event at the restaurant, is that person an intermediary?
>
> A: Actually, if that question came up to me personally, I would refer that to the legal unit. I wouldn't make that determination because that kind of enters into, I am not a hundred percent sure. That is an instance where I would seek the guidance from the legal unit or from my supervisors.
>
> Q: Actually, isn't the rule that hosts of campaign-sponsored fundraising events where the event is paid for by the campaign are not –
>
> A: You're probably right. It probably should be that they are not.

Tr. 201. In fact, there is no "probably" about it: The 2009 Campaign Finance Board Handbook (DX DCO-5 at x) explicitly provides that hosts of campaign sponsored fundraisers are not intermediaries:

> The new legislation now defines an intermediary as a person or entity known to the candidate who solicits a contribution for the campaign or delivers a contribution to the campaign. The candidate him/herself, the treasurer, other campaign staff, spouses, domestic partners, parents, children, or siblings of the person making the contribution, fundraising agents, or **hosts of any campaign-sponsored fundraiser are not considered intermediaries**.

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
October 8, 2013
Page 5

(emphasis added).

    The two CFB witnesses, and the handbook published to guide the campaigns, are entirely consistent with the view of Martin Connor, hired by the Liu Campaign to bring the Campaign into compliance with its reporting obligations, including with respect to intermediaries. Mr. Connor testified at trial and squarely presented the law as it is, not as the government wishes it to be. In a letter to the Court submitted herewith, he reiterates the following points after reviewing the government's memorandum:

1. The government contends that the CFB provided a definition of an intermediary that confirmed that Mr. Wang was an intermediary who should have been reported to the CFB. The definition of an intermediary provided to Ms. Hou by the CFB (Memo at 6-7) was incomplete, materially inaccurate, and did not correctly set forth all the rules concerning who was an intermediary. It is simply not the law that anyone who solicits a campaign contribution in connection with a fundraising event is an intermediary. That is the beginning of the analysis, not the end. As I testified to in detail at trial, there are myriad rules, and exceptions to rules, that determine whether a person who has solicited contributions for an event is an intermediary. Thus, no conclusion as to what the Campaign's reporting obligations were with respect to intermediaries can be reached in reliance upon the inaccurate definition provided to Ms. Hou by the CFB. Ms. Hou and the Campaign were guided by my view of the law, not by what Ms Hou was told by the CFB.

2. Because the Campaign paid in whole or in part for the May 9th event, no intermediaries were to be reported.

3. With respect to the contributions that were solicited at or around the May 9th event but collected after the event, unless Ms. Hou had specific knowledge of who made the solicitation and that the solicitation was made other than at the event, no intermediary reporting was required. The decisions concerning the reporting of intermediaries were done in a big rush in December 2011 and January 2012. I have no basis to believe that, some six to nine months after the events, Ms. Hou had any specific knowledge of who solicited what particular contribution. Nor, with at that point 3,000 contributions, would I expect her or anyone else to be able to remember.

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
October 8, 2013
Page 6

4. I also note that the government entirely ignores the fact that Ms. Hou (and the Campaign) would have no motive to intentionally fail to disclose intermediaries from the May 9th event (particularly in Ms. Hou's interview by the government in February 2012) when in fact the Campaign, through my document production cover letters, specifically identified the involvement of these fundraisers to the government prior to Ms. Hou's interview.

5. As I have said, when I began interacting with Ms. Hou in October 2012, in order to identify intermediaries, I quickly concluded that Ms. Hou did not understand the intermediary reporting rules. Though I was aware that she had solicited intermediary forms from one or more persons prior to my being retained by the Campaign to address this issue, I did not rely on any judgments made by Ms. Hou as to who was an intermediary and instead set out to do a full review of all possible intermediaries. The Campaign relied on my judgment as to who needed to be reported, not on any conclusions Ms. Hou had made before I was asked to advise the Campaign.

It is simply beyond our understanding upon what basis the government insists that Ms. Hou and the Campaign failed to report intermediaries and then to use that erroneous argument to bootstrap its argument that Ms. Hou ought to be held responsible for the intended loss of the May 9th and August 17th contributions. Though the government seeks to marginalize Mr. Connor, claiming he was not provided with material facts and thus his advice to Ms. Hou and the Campaign cannot shield Ms. Hou, Mr. Connor does not agree that he did not have all the information. But more to the point, the government's own witnesses and evidence confirm Mr. Connor's view, not that of the government.

Without the linchpin of the alleged failure to report intermediaries, the government's argument that Ms. Hou's knowledge and intent to further the solicitation of straw donors at these events simply falls apart. And Ms. Hou is left to be sentenced on the attempt because of her solicitation of the donation from Thomas Wang. As to that, the intended loss amount is $1050 and leads to no increase above the base offense level of 7 in §2B1.1 for amount of loss.

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
October 8, 2013
Page 7

II.   **There Should Be No Enhancement for "Use of Sophisticated Means".**

The PSR and Ms. Hou contend that there should be no enhancement for use of sophisticated means under U.S.S.G.§2B1.1(b)(10)(C). The government argues that the two point enhancement is warranted.

As set forth in the Comments to Guidelines' §2B.1.1, "sophisticated means" means

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells or offshore financial accounts also ordinarily indicates sophisticated means.

Here, the Probation Department rejected the applicability of the enhancement, concluding that "asking people to make donations, and then reimbursing them, does not seem a highly developed scheme. It is not tantamount to creating a fake company in order to hide assets or transactions". PSR at 29.

Nevertheless, the government continues to argue in its favor. The government premises its argument on a contention that "numerous steps were taken to ensure success of the scheme": the recruitment and reimbursement of numerous straw donors; the collection of fraudulent contribution forms; the organization of fundraising dinners; the use of code words; and the coaching of straw donors to lie – all of which, according to the government, "comprise a complex plan that justifies the enhancement". Gov't Memo at 13.

As the PSR implicitly notes, the scheme does *not* involve the steps cited by the government. This structure was not established to further the scheme but pursuant to a lawfully constituted and registered fundraising entity engaged in largely lawful activity. That the Liu Campaign solicited donors is not a step in furtherance of a sophisticated scheme; nor is the collection of donor forms; nor is the arranging of fundraising dinners. Indeed, of the over 3000 donations reported by the Liu Campaign during the period Ms. Hou was treasurer, the government points to 18 or 19 having been unlawful and another eight the illegitimate donations

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
October 8, 2013
Page 8

arranged by the government itself at the August 17th event. And all of the legitimate donations were collected by use of these same "steps".

In this way, the acts relied upon by the government to warrant the sophisticated means enhancement are at odds with the cases that have held that the enhancement applies. In each of the cases a protocol of steps is established for the purpose of committing the fraud. For example, in *United States v. Jackson*, 346 F.3d 22, 23 (2d Cir. 2003), the defendant

> would begin by identifying a wealthy target, usually a corporate executive, by searching the Internet. He would purchase personal information about the executive from an 'information broker' on the Internet, then place calls to banks, credit card companies, and hotels and use the previously acquired personal information to convince whomever he was speaking to that he was the executive. He would thereby obtain more private information about the victim, such as account numbers and credit card expiration dates. He would sometimes increase the credit limit on the victim's accounts and change the billing address to the address of a hotel. Jackson used hotels in several different states for this purpose

Similarly, in *United States v. Yager*, 209 Fed. Appx. 48, 49 (2d Cir. 2006), the defendant "conducted a complex and sophisticated scheme, including the use of false names, or the names of his accomplice's unwitting relatives, mail forwarding services, and a voice modulation device". And in *United States v. Lewis*, 93 F.3d 1075, 1082-1083 (2d Cir.1996), "there was a three-step scenario that used numerous fictitious entities and multiple checks with the sole purpose of evading taxes and avoiding IRS detection. It was crafted by Abrams Associates, an accounting firm with knowledge of the tax code and system, and it was designed to move money through two levels of bank accounts in order to conceal the track the money followed."

Cases from other circuits also look for a protocol established to commit the crime. *See, e.g., United States v. Jagim*, 978 F.2d 1032, 1042 (8th Cir. 1992), *cert. denied sub nom., Ziebarth v. United States*, 508 U.S. 952 (1993) (using falsification and backdating of documents); *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996) (use of a separate bank account in defendant's wife's name and the conversion of concealed income into multiple cashier's checks was sufficient to justify the enhancement); and *United States v. Becker*, 965 F.2d

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
October 8, 2013
Page 9

383, 390 (7th Cir. 1992), *cert. denied*, 507 U.S. 971 (1993) (defendant used a 'so-called warehouse bank' that allowed him to keep his assets in an account identified only by an arbitrary number not readily traceable to defendant).

Here, the steps alleged by the government constructed to carry out and to conceal the straw donor scheme simply do not have the factors present in these cases. There is nothing inherently criminal or scheme furthering in the organization of a dinner, even of the May 9th dinner. Through these dinners, and the recruitment of donors and the collection of forms, the Liu Campaign received millions of dollars from over 3,000 donors, only 18 or 19 of which the government contends were fraudulent. And in fact, the testimony was unequivocal that the hosts attempted initially to find legitimate donors to attend the May 9th event. That is, to use the entirely legitimate "steps" in an entirely legitimate way. *See, e.g.*, Alex Lu at Tr. 791.[1] It was only when they were unable to do so and, fearing they would fail to live up to their commitment to Jeffrey Wu, an offer of reimbursement was made. *Id.* The specific means for carrying out the straw donor scheme – essentially, directly offering a donor reimbursement and then handing him $800 – is, as the Probation Department notes, "not very highly developed.". There were no phony accounts, no false names, no foreign entities, no complicated structures to avoid tracing the source of money – just $800 cash across a table.

Two other factors to which the government points should be addressed, as well. First, the "use of code words" should not go unmet. The only "code words" referenced in the trial was the phrase "this is Richard's event", a cipher through which Oliver Pan says he "meant to convey" that Richard Kong had supplied all of the money donated at the event, but the meaning of which he never relayed to Ms. Hou and as to which Pan "did not know if she took it that way". Thus, this one sided code adds nothing to the complexity of the scheme.

---

[1] Q: So you tried to get real donations but you ran into trouble, correct?
A: Yes.
Q: It didn't start out with the idea to get donors who weren't real, right? It started out with the idea to get real donors?
A: Yes.
Q: But Thomas Wang wanted to keep his commitment to Jeffrey Wu, isn't that correct?
A: Correct.

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

> Hon. Richard J. Sullivan
> United States District Judge
> United States District Court
> Southern District of New York
> October 8, 2013
> Page 10

Finally, as to it being part of the scheme to "coach straw donors to lie", the only evidence of anyone coaching straw donors to lie came from the testimony of Meng Hua Wang (Tr. 830:16-24), who was alleged by the government *not* to be a co-conspirator and who specifically testified that he hid from Ms. Hou the fact that there were straw donors. Tr. 838:1-12. Moreover, at the time he was telling donors to lie to the government he was assuring the Liu campaign (through Alex Lu) that any problems were innocent and could be remedied. Tr. 840:13-841:4.[2] Indeed, perhaps to leave the false impression that Ms. Hou sought to coach witnesses during the course of the investigation the government omits the fact that in a lengthy text conversation with Mr. Lu during which she learns that FBI agents are in his office she specifically tells him she cannot discuss what he should say to the FBI:

> LU: FBI is in my office. Let's meet up.
>
> HOU: I can't meet up today. I have to go to Manhattan right away and **I am not allowed to give you any advice or suggestion in regard to the FBI visit.**

Tr. 782:9-12 (emphasis added); *see also* GX 522.

Moreover, if it were so that Ms. Hou were deemed to be interfering with the investigation, it would be improper double counting to enhance her sentence an additional two points under "sophisticated means" when it is already being enhanced two point for obstruction because of the convictions on Counts Three and Four – an outcome prohibited by U.S.S.G. §2B1.1 Application Note 8(C).

For these reasons, we submit that the sophisticated means enhancement does not apply.

### III. There Should Be No Enhancement for "Breach of Trust".

Under U.S.S.G. §3B1.3, a two point enhancement may be imposed where the defendant to be sentenced "abused a position of public or private trust". Both the Probation Department and the government contend that the section applies because "as campaign treasurer", Ms. Hou was "entrusted with regulatory compliance" (PSR at 31). In its submission, the government amplifies the argument, asserting that the City "relies on the treasurer's faithful performance of her duties

---

[2] And Mr. Lu confirmed that he did so. Tr. 809.

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan<br>
United States District Judge<br>
United States District Court<br>
Southern District of New York<br>
October 8, 2013<br>
Page 11

when it provides City money under the matching funds program". Gov't Memo at 11. We respectfully submit that this misunderstands the nature and scope of the enhancement. To hold that the enhancement applies would be at odds with established Second Circuit law and would announce a broad new rule with wide applicability.

As an initial matter, it would appear that the government agrees that the enhancement is limited only to those situations where the defendant victimized those who reposed trust in him or his office. That is not surprising, since that question has been raised in a number of circuits, including the Second Circuit, and answered in the affirmative: the defendant must violate the trust **of the victim**. *See United States v. Thorn*, 317 F.3d 107, 120 (2d Cir. 2003) ("whether a position is one of 'trust' . . . is to be viewed from the perspective of the offense victims"); *United States v. Mackey*, 114 F.3d 470, 475 (4th Cir. 1997); *United States v. Glymph*, 96 F.3d 722, 727 (4th Cir. 1996); *United States v. Zaragoza*, 123 F.3d 472, 481 (7th Cir. 1997); *United States v. Hill*, 915 F.2d 502, 506 n.3 (9th Cir. 1990); *United States v. Trammell*, 133 F.3d 1343, 1355 (10th Cir. 1998); *United States v. Garrison*, 133 F.3d 831, 837 (11th Cir. 1998).

Instead, the question of whether the enhancement applies turns on whether the intended victim here, the City of New York, reposed trust in Ms. Hou and was then victimized by that trust.

Under the Comments to the Guidelines' provision, " public or private trust" is "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." It is to us rather obvious that it was the Campaign that employed Ms. Hou, not the City, and it was the Campaign that conferred professional or managerial discretion on her, not the City, and it was with respect to her responsibilities and duties to the Campaign where she was authorized to exercise discretion, not the City. If it were so that every arms' length recipient of a filing trusts the filer within the meaning of this section, then *every* prosecution for a false bank loan or credit application, *every* false tax filing, *every* false corporate books certification, *every* false insurance claim, and myriad others would equally warrant the enhancement. Yet in each of those instances, the recipient of the certified filing "trusts" the filer as much as the City "trusted" Ms. Hou.

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
October 8, 2013
Page 12

    Yet, a review of decisions in this area reveals no case where the enhancement has been applied outside the confines of an employer and employee, broker/agent and customer, intra-family or other relationship of true reliance and trust.

    The seminal case in the Circuit is *United States v. Wright*, 160 F.3d 905, 910-911 (2d Cir. 1998). There, the Court held that ". . . one who merely engages in arms-length dealings in a commercial transaction does not thereby occupy a position of trust". The examples used by the Court to illustrate the sweep of its ruling contradict the government's attempt here:

> For example, in connection with a fraud offense, a defendant who merely procures loans to his company does not hold a position of trust vis-a-vis the lenders. *See United States v. Jolly*, 102 F.3d at 48-50. Nor does a corporate officer who negotiates a procurement contract with the government thereby occupy a position of trust vis-a-vis the government. *See United States v. Broderson*, 67 F.3d at 455. On the other hand, a defendant who is a fiduciary or one who is responsible for the well-being of a victim of his crime, and as such is given discretion over spending and is thereby afforded an opportunity, not generally available, to embezzle moneys, does occupy such a position. *See, e.g., United States v. Valenti*, 60 F.3d 941, 947 (2d Cir. 1995) (enhancement proper as to defendant who embezzled funds from private apartment owners' association of which he was treasurer).

We were unable to locate any decision since *Wright* that holds otherwise. Indeed, *Wright* was cited with approval by the Circuit in *Thorn* (160 F.3d at 910), a case on which the government relies, albeit for different reasons. *And see United States v. Hirsch*, 239 F.3d 221, 227 (2d Cir. 2001) (reiterating *Wright* but finding defendant held a position of trust because he "was a broker and investment advisor entrusted with investment discretion by his investors and because he had a fiduciary and personal relationship (rather than an arms-length relationship with his investors").

    Here, Ms. Hou's arms' length filings were distinctly not relied upon by the City of New York, and certainly no more than the SEC relies on a public company certification of its financials or the IRS relies on an accountant's signature on a tax return he prepared. Instead, the filings with the CFB were and are subject to multiple layers of formal and informal auditing, a

LAW OFFICES OF
GERALD B. LEFCOURT, P.C.

Hon. Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
October 8, 2013
Page 13

process that simply does not signify a relationship of trust between the treasurer of the campaign and the regulatory agency established to police her.

In sum, the Court should sentence Ms. Hou based solely upon her conduct concerning Thomas Wang, and should determine that neither the use of sophisticated means nor abuse of discretion enhancements applies.

Thank you for your consideration in this matter.

Respectfully submitted,

/s/

Sheryl E. Reich